UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JONATHAN L. GOOLSBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-2508 NAB |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Jonathan L. Goolsby's appeal regarding the denial of disability insurance benefits under the Social Security Act. Goolsby alleges disability due to bipolar disorder, mood disorder, and seizures. (Tr. 177.) The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 9.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse and remand the Commissioner's decision.

**Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the

Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## DISCUSSION

Goolsby presents three issues for review. First, he states that the administrative law judge (ALJ) improperly gave weight to a medical evaluation that was not in evidence. Second, Goolsby states that the ALJ failed to properly evaluate opinion evidence by failing to give controlling weight to his treating psychiatrist's medical opinion and giving no weight to his counselor's opinion. Third, Goolsby states the ALJ did not properly consider his residual functional capacity (RFC). The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**Consideration of Medical Opinion not in Evidence**

First, Goolsby contends that the ALJ committed reversible error by referencing a 2011 consultative examination from licensed psychologist Joseph W. Monolo. Goolsby began receiving disability insurance benefits and supplemental security income in September 2003. (Tr. 20.) Those benefits were discontinued on June 30, 2011. (Tr. 20.) Goolsby did not appeal the termination of benefits. (Tr. 20.) Goolsby filed the current application for disability

3

insurance benefits on March 24, 2014. (Tr. 152-58.) Goolsby alleges an onset date of disability of August 28, 2013. In the ALJ's decision in this case, the ALJ wrote a lengthy two paragraph summary of Manolo's 2011 consultative psychological examination from the previous case and referenced it in another area of his opinion. (Tr. 25, 27.) The ALJ did not provide any citation for Monolo's examination in his opinion and did not include the examination in the List of Exhibits attached to his opinion[1]. (Tr. 25, 27, 33-35.)

Goolsby contends that the ALJ's inclusion and consideration of medical records outside of the disability time period constitutes reversible error. Goolsby notes that the ALJ gave weight to this opinion and relied upon it to support the decision to deny benefits. The Commissioner states that the ALJ did not rely on the opinion and merely referenced it for background information, because the medical record in this case is sparse. The Commissioner also states that regardless of the ALJ's discussion of Monolo's consultative examination, the final decision is supported by substantial evidence.

Social Security regulations require the ALJ to develop the claimant's complete medical history for at least the 12 months preceding the month in which the claimant's application was filed. 20 C.F.R. § 404.1512. The ALJ may consider evidence outside the alleged period of disability. "Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits may be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For example, previous medical records may demonstrate the progression of a claimant's medical condition. In the ALJ's discussion of Monolo's examination, he writes that Monolo "did not observe the severity of mental health symptoms that are commonly disabling." (Tr. 27.) He also wrote "When Joseph Monolo examined the

---

[1] The Commissioner provided a copy of Monolo's consultative examination in the certified administrative transcript provided to the Court. (Tr. 288-90.)

4

claimant in 2011, he observed no indication of thought disorder or attention problems and that he claimant had intact concentration and persistence and was able to understand, remember, and carry out instructions." (Tr. 25.) The ALJ's discussion of a medical examination not in the record and outside of the time period at issue is problematic, because it is unclear whether this evidence influenced the ALJ's decision making. The ALJ does not explain why this record is referenced. The Commissioner speculates that the ALJ used Monolo's examination to provide background information regarding Goolsby's claim. However, there is no support for that assumption in the record. Nevertheless, the ALJ's reference to this examination is not reversible error unless it affected the outcome of the ALJ's decision. Because the ALJ leaves the inclusion of this evidence open to speculation, the Court will review whether the ALJ's decision exclusive of Manolo's examination is supported by substantial evidence in the record as a whole.

**Medical Opinion Evidence of Dr. Jenifer Shashek**

Next, Goolsby contends that the ALJ improperly discounted the weight of his treating physician's opinion. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2)[2]. All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole;

---

[2] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 404.1527, the court will use the regulations in effect at the time that this claim was filed.

(6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c); *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

Dr. Jennifer Shashek, a psychiatrist, treated Goolsby between April 2013 and February 2016. (Tr. 258-77.) Dr. Shashek diagnosed Goolsby with bipolar disorder type 1. His mental status examinations were substantially normal. During this treatment period, Goolsby experienced some manic episodes and had periods of time when he had trouble sleeping and accessing medication. Dr. Shashek's notes are very difficult to read due to barely legible handwriting; therefore, many of her substantive notes are indecipherable.

Dr. Shashek completed a vocational rehabilitation form for Goolsby on March 13, 2014. (Tr. 251.) She diagnosed him with Bipolar Type I Disorder, most recently hypomanic. She noted that he could not have irregular shifts and needed a regular schedule. She noted he had emotional lability and needed to work in as stable as an environment as possible.

6

On February 22, 2016, Dr. Shashek completed a Medical Assessment of Ability to Do Work Related Activities (Mental) for Goolsby[3]. (Tr. 267-71.) She indicated that she treated Goolsby every 2-3 months for almost three years at the time that the form was completed. (Tr. 267.) She diagnosed Goolsby with bipolar disorder, most recent manic episode. She noted that he was not a malingerer to her knowledge and his prognosis was fair to poor. (Tr. 267.) Dr. Shashek opined that Goolsby would be off task more than 20 percent of the time, require redirection 1 to 2 times per week, and would be absent from work more than three times a month. (Tr. 268.) She opined that he had a slight restriction in activities of daily living, moderate difficulties in social functioning, difficulties in maintaining concentration, persistence, and pace, and episodes of decompensation of extended duration often. (Tr. 268.) She further opined that he had moderate to marked limitations in understanding, remembering, and carrying out detailed instructions, interacting appropriately with the public; getting along with co-workers and peers without unduly distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior, responding appropriately to changes in a work setting; dealing with normal work stress; being aware of normal hazards, and taking appropriate precautions. (Tr. 270.) Dr. Shashek wrote several times that the marked limitations would occur during a manic episode of Goolsby's bipolar disorder. (Tr. 269-70.) She found he had marked limitations in maintaining attention for two hour segments; maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision during a manic episode. (Tr. 269-70.)

The ALJ's discussion of the weight given to Dr. Shashek's opinion is confusing. (Tr. 27-29.) The ALJ gave "limited weight" to the global assessment functioning (GAF) score assigned to Goolsby by Dr. Shashek on April 2, 2013, because Goolsby was not receiving medication and

---

[3] Dr. Shashek's handwriting and the copy resolution on this form are also very difficult to read.

7

was abusing alcohol at the time. (Tr. 27.) The ALJ devotes two paragraphs to this one time initial GAF score.

Then, the ALJ stated that Dr. Shashek's opinion is given greater weight than the opinion offered by state agency psychologist Kyle DeVore, whose opinion was given partial weight. (Tr. 29-30.) The ALJ's explanation is as follows:

> The undersigned observed that Dr. Shashek in her medical source statement stated the claimant had moderate and marked limitations in the subset areas of understanding, remembering, and carrying out instructions as well as his concentration, persistence, and pace, social interaction, and adaptation, but those limitations are likewise inconsistent with treatment records in this case. While the undersigned gives this opinion greater weight than the opinion of Dr. DeVore, and defers to that opinion to some extent, significant departures in areas other than social functioning are given lesser weight, particularly where either the claimant's or his father's answers contradict the limitations in the medical source statement or where the physician's treatment records contradict the medical source statement limitations. Otherwise, where the limitations are consistent with the overall records the undersigned gives this opinion greater weight.

(Tr. 29.) The Court deduces that Dr. Shashek's opinion was given the most weight, Dr. DeVore's opinion partial weight, and counselor Mary O'Brien's opinion was given no weight. A review of the record indicates that Dr. Shashek's opinion aligns very closely with O'Brien's medical source statement and the other evidence in the record.

The ALJ discounted the opinions in this case for several reasons, but primarily because of Goolsby's activities of daily living and periods of waning of his mental health symptoms. The symptoms of mental impairments wax and wane. Just as a person with physical impairments need not be bedridden or completely helpless to be found disabled, a person with mental impairments does not have to be hospitalized or suicidal every day to be found disabled. *See*

*Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (well settled law that a claimant need not be bedridden or helpless to be found disabled). The Eighth Circuit has repeatedly held that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998). Further, "a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998). "It is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased. Indeed, one characteristic of mental illness is the presence of occasional symptom-free periods." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal citations omitted). "Although the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim." *Id.* "Unlike many physical impairments, it is extremely difficult to predict the course of mental illness. Symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." *Id.*

Dr. Shashek is a psychiatrist and has treated Goolsby for several years. A review of the record as a whole shows that Dr. Shashek's opinion is consistent with the other evidence in the record as a whole and is not inconsistent with the legible narrative portions of her treatment notes. The ALJ mentions that Goolsby socialized with his family, ran errands, drove, cooked, mowed the lawn for his brother twice a week, played computer games, and expressed he was bored. These activities are not inherently inconsistent with Dr. Shashek's opinion regarding his limitations. Further, the function report completed by Goolsby's father is also consistent with

Dr. Shashek's opinion and O'Brien's medical source statement regarding Goolsby's ability to concentrate, complete tasks, understand and follow instructions, adapt to stress and other changes, and get along with others. (Tr. 197-204, 267-71, 279-85.) The ALJ also focused on Goolsby's failure to fully comply with his medication. "[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric mediations can be, and usually is, the result of the mental impairment itself." *See Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009). Therefore, the ALJ should have given controlling weight to Dr. Shashek's opinion.

**Medical Source Statement of Mary O'Brien**

Mary O'Brien, Goolsby's licensed professional counselor, completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) regarding Goolsby on May 5, 2016. (Tr. 281-85.) There are no treatment records from O'Brien in the certified administrative record. Plaintiff's counsel informed the ALJ at the administrative hearing that O'Brien would not issue her clinic notes. (Tr. 40.)

In her evaluation, O'Brien wrote that she had treated Goolsby since January 2007 for approximately 2-3 times per month. (Tr. 281.) She diagnosed him with Bipolar II Disorder and Asperger's syndrome. (Tr. 281.) O'Brien stated that Goolsby received psychotherapy and cognitive behavioral therapy and he was able to apply techniques to facilitate recovery from episodes. (Tr. 281.) She indicated that he would have difficulty working a full time job, because he "demonstrates too many challenges." (Tr. 281.) She also indicated that he would be off task more than 20% of the time and would require redirection 1 or 2 times per day. (Tr. 282.) She also opined that he would be absent from work about 3 times per month. (Tr. 282.) She found that he had marked restriction in activities of daily living and maintain social functioning with

10

frequent difficulty with maintaining concentration, persistence, or pace and often repeated episodes of decompensation of extended duration. (Tr. 282.)

O'Brien indicated that Goolsby had moderate limitations interacting appropriately with the general public, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, and using public transportation. (Tr. 284.) She indicated that he had marked limitations in understanding, remembering, and carrying out short and simple instructions; maintaining concentration for a two hour segment; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 283-84.) She also found that he had marked limitations in getting along with co-workers and peers without unduly distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior; adhering to basic standards of neatness and cleanliness, responding to changes in the work setting; being aware of normal hazards and taking appropriate precautions, and traveling in unfamiliar places. (Tr. 284.) Finally, she found that he was extremely limited in dealing with normal work stress. (Tr. 284.) She also stated that he was not able to manage his benefits in his best interest. (Tr. 285.)

O'Brien also included a letter providing a narrative of Goolsby's treatment. (Tr. 279-80.) She stated that she has treated Goolsby for 9 years in a fairly regular and consistent manner. (Tr. 279.) She identified his symptoms as "depression combined with agitation, irritability, anxiety, insomnia, distractibility, and racing thoughts, unrealistic grandiose beliefs, impaired judgment,

11

impulsiveness, and acting recklessly without thinking about the consequences." (Tr. 279.) She observed that Goolsby's presenting symptoms have caused more than a minimal limitation of his ability to do basic work activities. (Tr. 279.) She specifically addressed the effects of Goolsby's symptoms in a detailed manner:

> My client also demonstrates a marked inability to develop meaningful relationships with peers and continues to struggle to understand the subtleties of communicating through eye contact, body language, or facial expressions and seldom shows affection towards others. While my client can at times show an intense focus and highly logical thinking, it at most times is inappropriately applied towards social situations in meaning and reason. My client is often times viewed as being disrespectful and rude since there is an inability to comprehend the expectations of appropriate social behavior and inability to determine the feelings of those around him. It can be said that my client demonstrates a lack of both social and emotional reciprocity.
>
> In my observation and interaction with Mr. Goolsby over the last nine years, it appears that his presenting symptoms have caused more than a minimal limitation of his ability to do basic work activities. Mr. Goolsby's symptoms continue to be and are currently attenuated by medication as well as psychosocial support. There is also a marked demonstration of limitations on his ability to respond to mental demands or changes in the environment which tend to cause my client to decompensate. Mr. Goolsby also demonstrates difficulties in maintaining concentration and persistence as well as a pervasive loss of interest in a majority of activities.
>
> Over the course of treatment, Mr. Goolsby has not proven to be able to maintain a level of reasonable stability despite modifying medications, application of Cognitive Behavioral techniques, and other tools recommended by mental health professionals.
>
> Mr. Goolsby continues to be challenged and at times exacerbated with an inability to maintain as an Independent individual which greatly hinders his ability to maintain a level of employment and ability to provide his basic needs. While there has been a great dependency on the support of his aging father, of whom he currently resides with his

> significant other and his newborn son and stepson, it is realistic to consider that this resource is not desirable due to the contention that this arrangement has caused in the home. Mr. Goolsby's aging father is not in a financial position to provide adequate long term support, and more so to mention that all life does come to an end. This in itself, lends to the vulnerability to depressive episodes and is met with limitations of understanding by my client.

(Tr. 279-80).

Despite, this very detailed and comprehensive report, the ALJ gave no weight to O'Brien's opinion, because he stated it was not from an acceptable medical source and he found it was inconsistent with the medical records of treatment, Goolsby's testimony, and Goolsby's father's answer in a function report. (Tr. 29.)

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources.* It then divides *other sources* into two groups: *medical sources* and *non-medical sources. Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources,

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include nurse practitioners, physician assistants, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. § 404.1513(d). "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939 at *2. The parties do not dispute the existence or type of Goolsby's medically determinable impairments.

"[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id*. "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record). Therefore, the ALJ is required to consider O'Brien's opinion in evaluating Goolsby's impairments.

The Court finds that the ALJ's assignment of no weight to O'Brien's medical source statement is not supported by substantial evidence in the record. As the ALJ acknowledges, O'Brien's medical source statement should be considered despite not being from an acceptable medical source. The letter in support of the medical source statement is very thorough and fully supports the conclusions in the medical source statement. This is not a case where the therapist completed a checklist of limitations without any supporting explanation. The ALJ's blanket rejection was improper, because Ms. O'Brien's assessments contained substantial detail and were not inconsistent with the other medical evidence in the record. As stated above, O'Brien's opinion was consistent with Dr. Shashek's opinion, Goolsby's testimony, and the function report completed by Goolsby's father. The ALJ overstated Goolsby's level and extent of daily activities. Based on the foregoing, the Court finds that the ALJ erred by failing to give any weight to O'Brien's medical source statement.

**RFC Determination**

Because the Court has found that the ALJ's evaluation of the medical opinion evidence is not supported by substantial evidence, the Court is remanding this action to the ALJ for a reconsideration of Goolsby's treating providers' opinions and a new RFC determination.

## CONCLUSION

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings). Because Goolsby first applied for benefits in 2014, and it is now 2019, the Commissioner is urged to begin proceedings without delay and resolve this case as soon as possible.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Goolsby seeks in his Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 18.]

**IT IS FURTHER ORDERED** that the ALJ's decision of August 15, 2016 is **REVERSED** and **REMANDED**.

**IT IS FURTHER ORDERED** that upon remand, the Commissioner should re-weigh the opinions of Goolsby's treating providers in accordance with this opinion. Then, the

Commissioner must develop a new RFC determination regarding Goolsby's mental health impairments.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4

Dated this 25th day of March, 2019.

                                              /s/ Nannette A. Baker
                                          NANNETTE A. BAKER
                                          UNITED STATES MAGISTRATE JUDGE